IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION

| | |
|---|---|
| Jonathan Donell Edwards Rhodes,<br><br>Plaintiff,<br><br>v.<br><br>Joseph McFadden, James Blackwell, Tiffany Ravenell, Larry Cooper, Fracine Bachman, Ms. Birch, Captain Jordan Williams, and Ms. Rice,<br><br>Defendants. | C/A No.: 5:19-cv-3231-SAL<br><br><br>**ORDER** |

This matter is before the court for review of the July 22, 2022, Report and Recommendation of the United States Magistrate Judge Kaymani D. West, made in accordance with 28 U.S.C. § 6363(b)(1)(B) and Local Civil Rule 73.02(B)(2) (D.S.C.). [ECF No. 110.] In her Report, the magistrate judge recommended this court grant the Defendants' Motion for Summary judgment,[1] ECF No. 79, for at least nine reasons. *See generally id.* Chief among the magistrate judge's reasons are the findings that Rhodes did not properly exhaust his administrative remedies before suing, and that Defendants did not violate Rhodes' due process or Eighth Amendment rights. *Id.* at 10–26. Rhodes timely objected to each of these three findings but did not object to the other six grounds. [ECF No. 118.] The matter is now ripe for resolution. After a thorough review of the record, the Report, Rhodes' objections, and the relevant case law, the court finds that Rhodes failed

---

[1] Defendants moved for alternative relief in their motion: dismissal or summary judgment. [ECF No. 79.] The magistrate judge determined she would treat the motion as one for summary judgment given the advance notice of the parties and the commencement of discovery. [ECF No. 110, at 9.] Neither party objected to this decision. The court therefore treats the motion as one for summary judgment.

1

to exhaust his administrative remedies. As a result, the court need not reach the merits of Rhodes' claim because "[e]xhaustion is a precondition to filing suit in federal court." *Kitchen v. Ickes*, 116 F. Supp. 3d 613, 624 (D. Md. 2015), *aff'd*, 644 F. App'x 243 (4th Cir. 2016).

## BACKGROUND

The Report and Recommendation sets forth in detail the relevant facts and standards of law on this matter. *See* [ECF No. 110.] Rhodes does not object to the standards of law, so the court incorporates them without further discussion. But Rhodes does object to various findings of fact related to his purported failure to exhaust his administrative remedies. The court, then, recounts the facts relevant to his exhaustion below. For a more detailed recounting of the facts of the case, see the magistrate judge's Report. *Id.* at 2–8.

This case goes back to 2016, when Rhodes was housed at Lieber Correctional Institution. [ECF No. 60, ¶¶ 3, 10.] After corrections officers searched Rhodes' cell twice, uncovering a cell phone and phone charger, Rhodes was charged with seven major disciplinary offenses. *Id.* ¶ 17. Rhodes claimed he was only served an incident report for one of these charges. *Id.* ¶ 20. On August 15, 2016, Rhodes appeared at three back-to-back disciplinary hearings, during which he pleaded guilty to possession of the cell phone charger but pleaded not guilty to the remaining six charges. [ECF Nos. 79-1, 79-2, 79-3.] Rhodes asked to proceed on the other charges on another day, as he never received the corresponding incident reports. [ECF Nos. 79-1, 79-2, 79-3.] Officer Bachman, the presiding corrections officer, proceeded over Rhodes objection and ultimately found him guilty of four of the remaining charges, including possession of an escape tool. [ECF Nos. 79-1, 79-2, 79-3.]

The day after the hearing, August 16, 2016, Rhodes filed a Request to Staff Member (RTSM) asking corrections officers to "send[] my [DHO] hearing recorder for the *future* use of

my step 1 grievance." [ECF No. 106-1, at 141 (emphasis added).] A staff member responded on August 27, "recordings are saved for grievances[.]" *Id.* Rhodes then filed another RTSM on August 30, three days after corrections officers responded to the first RTSM, inquiring into the status of the recordings and asked for an update on his appeal. *Id.* at 142. No evidence in the record reflects that Rhodes filed any sort of grievance, either a Step 1 or Step 2 grievance, appealing the disciplinary hearing officer's decision.[2]

At the beginning of September, corrections officers transferred Rhodes to Lieber's Restricted Housing Unit (RHU). [ECF No. 60, ¶ 29.] Rhodes then appeared before a Security Detention Board on September 19, 2016, to determine whether he would remain in the RHU. [ECF No. 79-5.] During this hearing, Rhodes claimed that he had discovered "new evidence" that showed the possession of an escape tool charge was fabricated. *Id.*; [ECF No. 60, ¶ 36.] Despite this claim, the Security Detention Board found that his possession of an escape tool offense conviction made him a security risk and determined he should remain in the RHU. [ECF No. 79-5.]

After his Security Detention Hearing, and while in the RHU, Rhodes filed two paper RTSMs asking prison officials to investigate the newly discovered evidence. [ECF No. 106-1, at 150–151.] In the first RTSM, filed October 7, 2016, Rhodes said he was found guilty by the Security Detention Board, but he had found "newly discovered evidence . . . that [his] initial report did not say anything about an escape tool." *Id.* at 106-1. Staff responded the same day, "[p]er Warden McFadden – We are following up on this issue." *Id.* Rhodes' next RTSM followed up on his request to look into the newly discovered evidence. *Id.* at 150. Staff again responded and

---

[2] While Rhodes alleged he filed a Grievance on August 16, 2016, in his Amended Complaint, ECF No. 60 ¶ 28, but does not maintain this allegation in his Objections, see ECF No. 118. The court thus determines that Rhodes has abandoned this allegation.

3

claimed that Warden McFadden said Rhodes was "scheduled to be heard on [this] next week sir." *Id.*

Before his Security Detention Review Hearing, on November 23, 2016, Rhodes filed a Step 1 Grievance asking to overturn the conviction of possession of an escape tool and expunge it from his SCDC record. [ECF No. 106-1, at 152]; [ECF No. 79-7, at 18.] Both parties filed a record of this grievance form, and it is the only grievance form produced during discovery. Rhodes then appeared before the Security Detention Board on November 28, 2016, and the members of the Board said they would recommend Rhodes be removed from security detention but cautioned it was only a recommendation and the Columbia office would make the decision. [ECF No. 79-6.] Rhodes ultimately stayed in the RHU for six months. [ECF No. 60, ¶ 47.] More than two years later, Rhodes filed this action on November 15, 2019, alleging that Defendants violated his Constitutional rights and asking for various forms of relief. [ECF No. 1.]

## REVIEW OF A MAGISTRATE JUDGE'S REPORT

The court is charged with making a de novo determination of those portions of the Report to which specific objections are made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b)(1). A district court, however, only has to review de novo the specific portions of the Magistrate Judge's Report to which an objection is made. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b); *Carniewski v. W. Virginia Bd. of Prob. & Parole*, 974 F.2d 1330 (4th Cir. 1992). Without specific objections to portions of the Report, this court need not explain its reasons for adopting the recommendation. *See Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983).

"An objection is specific if it 'enables the district judge to focus attention on those issues—

4

factual and legal—that are at the heart of the parties' dispute.'" *Dunlap v. TM Trucking of the Carolinas, LLC*, 288 F. Supp. 3d 654, 2017 WL 6345402, at *5 n.6 (D.S.C. 2017) (citing *One Parcel of Real Prop. Known as 2121 E. 30th St.*, 73 F.3d 1057, 1059 (10th Cir. 1996)). A specific objection to the Magistrate Judge's Report thus requires more than a reassertion of arguments from the complaint or a mere citation to legal authorities. *See Workman v. Perry*, No. 6:17-cv-00765-RBH, 2017 U.S. Dist. LEXIS 175597, 2017 WL 4791150, at *1 (D.S.C. Oct. 23, 2017). A specific objection must "direct the court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

"Generally stated, nonspecific objections have the same effect as would a failure to object." *Staley v. Norton*, No. 9:07-0288-PMD, 2007 U.S. Dist. LEXIS 15489, 2007 WL 821181, at *1 (D.S.C. Mar. 2, 2007) (citing *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991)). The court reviews portions "not objected to—including those portions to which only 'general and conclusory' objections have been made—for clear error." *Id.* (emphasis added) (citing *Diamond*, 416 F.3d at 315; *Camby*, 718 F.2d at 200; *Orpiano*, 687 F.2d at 47).

## DISCUSSION

In her Report, the magistrate judge determined that the Defendants are entitled to summary judgment because Rhodes did not properly exhaust his available administrative remedies before bringing this action. While Rhodes does not contest the fact that he filed his grievance late, he objects to the magistrate judge's conclusion and argues he was not required to exhaust because the grievance procedures were a "dead end." The court does not agree with Rhodes.

As an initial matter, Rhodes' objection about the purported unavailability of his administrative remedies is likely a non-specific objection because he argued the same in his opposition brief. *See* [ECF No. 106, at 6.]; *see also* [ECF No. 110, at 17 n. 8.] The magistrate judge

briefly considered Rhodes' argument and dismissed it in a two-sentence footnote. Parties generally fail to specifically object to a Report when they rehash already-considered arguments. *See Howard v. Saul*, 408 F. Supp. 3d 721, 726 (D.S.C. 2019) (quoting *Abou-Hussein v. Mabus*, 2010 WL 4340935, at *1 (D.S.C. Oct. 28, 2010), aff'd, 414 F. App'x 518 (4th Cir. 2011) ("Courts will not find specific objections where parties 'merely restate word for word or rehash the same arguments presented in [their] filings related to summary judgment.'"). That Rhodes merely makes the same argument in his Objections likely allows the court to review this portion of the magistrate judge's Report for clear error only. But the court exercises caution, considering Rhodes' accusations that the magistrate judge failed to properly consider his argument, and reviews de novo Rhodes' objection.

The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), requires prisoners bringing actions relating to prison conditions to exhaust all "such administrative remedies as are available." For Rhodes to exhaust his administrative remedies, he must "[use] all steps that [the South Carolina Department of Corrections] holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (citations omitted). That means "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). And Defendants have the burden of proving Rhodes failed to properly exhaust the remedies provided by the South Carolina Department of Corrections. *See Jones*, 549 U.S. at 211–12.

To detail SCDC's procedures, Defendants provided the affidavit of Felecia McKie, the Chief of the Inmate Grievance Branch of the Office of General Counsel for SCDC. [ECF No. 79-7]. According to Ms. McKie, SCDC has an established grievance procedure that is shared to every inmate, orally and in writing. *Id.* at 2–3. The SCDC grievance procedure has three steps. *Id.* at 3.

First, an inmate must normally submit an RTSM (or an automated RTSM using the Kiosk) within eight working days of the incident to informally resolve their issue. *Id.* But this step is not required where, as here, an inmate appeals a disciplinary conviction. *Id.* Second, if the inmate finds the response to the RTSM unsatisfactory, or informal resolution is not at all possible, then he must file a Step 1 Grievance within five working days of the incident. *Id.* at 3–4, 12. Third, when an inmate receives a response to their Step 1 Grievance and is still not satisfied, then they must file a Step 2 Grievance on a separate form within five calendar days of receiving the Step 1 decision. *Id.* at 4. The institution's decision in the Step 2 Grievance is considered SCDC's final agency decision on the issue. *Id.* But an inmate may appeal the decision to the South Carolina Administrative Law Court. *Id.* Against this backdrop, the court finds that Rhodes must have at least filed a Step 2 Grievance before he fully exhausted his available administrative remedies.

But the facts show Rhodes failed to even timely file his Step 1 Grievance. In fact, the only Step 1 Grievance Form produced during discovery reveals that Rhodes did not file his grievance until November 23, 2016—100 days after the disciplinary hearing and 95 days late. [ECF No. 79-4]. And Rhodes does not dispute this fact in his Objections. Rather he argues that he did not need to exhaust his administrative remedies because "the inmate grievance system operates as a dead end" and so his administrative remedies were "unavailable." [ECF No. 118, at 10.] While it is true that prison grievance systems can operate as a dead end or be so opaque as to render them unavailable, that is not the case here.

The Supreme Court recently discussed the unavailability of administrative remedies in *Ross v. Blake*, 578 U.S. 632 (2016). There, the Court affirmed its prior decisions that administrative procedures are considered unavailable when they "operate as a simple dead end" or when they are "so opaque that it becomes, practically speaking, incapable of use." *Id.* at 643. To be considered a

dead end, corrections officers must be "unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* Though Rhodes argues this is the case, nothing in the record supports that conclusion. In fact, the evidence shows the opposite is true. Rhodes benefited from the RTSM system multiple times and received a response from prison officials each time. *See* [ECF No. 106-1, at 140, 141, 142, 150, 151, 159, 160, 161, 162, 163 (RTSMs included with Rhodes' opposition brief, each showing a response from corrections officers).] And Ms. McKie testified that inmates are briefed orally and in writing on the relevant grievance procedures, and corrections officers collect grievance forms during working hours daily. [ECF No. 79-7, at 3–4.]

This evidence reveals a functioning, attentive grievance system. Without providing any evidence which would allow this court to reasonably infer the unwillingness or inability of officers to carry out the SCDC grievance procedures, the court must find that Rhodes' administrative remedies were available. And because Rhodes now acknowledges that he filed a Step 1 grievance for the first time on November 23, 2016, the court finds that he did not properly exhaust his available administrative remedies. Exhaustion is mandatory and "a court may not excuse a failure to exhaust[.]" *Ross*, 578 U.S. at 639. The court thus finds that Defendants are entitled to judgment on all of Rhodes' claims.

## CONCLUSION

Having reviewed the Report and Recommendation, the objections, and the record before this court, and for the reasons set forth above, the court adopts the portion of the Report relating to administrative exhaustion, ECF No. 110 at 15–20, and **GRANTS** Defendants' Motion for Summary Judgment, ECF No. 79. The Clerk of Court is instructed to enter judgment appropriately.

**IT IS SO ORDERED.**

March 6, 2023

/s/Sherri A. Lydon
Sherri A. Lydon

Columbia, South Carolina                                      United States District Judge